UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, <br><br> Plaintiff, <br> v. <br><br> JOHN DOE, subscriber assigned IP address 32.210.53.156, <br><br> Defendant. | Civil Action No. <br> 3: 18-CV-00681 (CSH) <br><br><br> JUNE 7, 2018 |

**RULING ON PLAINTIFF'S MOTION FOR LEAVE TO SERVE A THIRD PARTY
SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**

**HAIGHT, Senior District Judge:**

## I. INTRODUCTION

Plaintiff, Strike 3 Holdings, LLC ("Strike 3") brings this copyright infringement action as the owner of original adult motion pictures that are featured on its subscription-based website. *See* Doc. 7-2 (Declaration of Greg Lansky), ¶3.[1] Strike 3 asserts that Defendant John Doe ("Defendant"), identified only by his or her IP address, has unlawfully distributed Plaintiff's copyrighted adult films by using BitTorrent, a "a system designed to quickly distribute large files over the Internet." Doc. 1, at ¶17. Pursuant to Rule 26(d) of the Federal Rules of Civil Procedure, Strike 3 has moved for leave to serve a third-party subpoena on Defendant's internet service provider ("ISP"), Frontier

---

[1] Greg Lansky is a member of General Media Systems, LLC ("GMS"), the parent company that owns Strike 3. Doc 7-2, ¶¶1,3. His Declaration states that "Strike 3 owns the intellectual property to the *Blacked, Blacked Raw, Tushy,* and *Vixen* adult brands, including the copyrights to each of the motion pictures distributed through *Blacked, Blacked Raw, Tushy*, and *Vixen* and the trademarks to each of the brand names and logos." *Id.* ¶3.

1

Communications, for the limited purpose of discovering Defendant's identity so that Strike 3 may serve Defendant with process and proceed in litigating this case. Doc. 7. For the reasons Strike 3 has presented in its motion and supporting papers, and the discussion detailed below, the Court will grant the motion for good cause, as limited by the conditions delineated herein.

## II. DISCUSSION

In general, parties "may not initiate discovery prior to satisfying the meet and confer requirement of Fed. R. Civ. P. 26(f)." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012). Specifically, under Rule 26(d), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)," except in limited proceedings delineated in Rule 26(a)(1)(B), or "when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). "[C]ourts may in some instances order earlier discovery." *Digital Sin, Inc.*, 279 F.R.D. at 241 (citing Fed. R. Civ. P. 26(d)). *See, e.g.*, *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 173.68.5.86*, No. 1:16-CV-02462 (AJN), 2016 WL 2894919, at *2 (S.D.N.Y. May 16, 2016) ("[A] party may engage in discovery before such a [26(f)] conference pursuant to a court order." (citing Fed. R. Civ. P. 26(d)(1))).

When considering whether to grant a motion for expedited discovery prior to a Rule 26(f) conference, courts apply a "flexible standard of reasonableness and good cause." *Malibu Media LLC,* 2016 WL 2894919, at *2 (collecting cases). *See also Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 152-53 (D. Conn. 2008) (applying "good cause" standard to request for expedited discovery (citation omitted)). *See generally* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed. 2018) ("Although [Rule 26(d)] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts

presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").

In the Second Circuit, in evaluating subpoenas seeking identifying information from ISPs regarding subscribers who are parties to copyright infringement litigation, courts have examined the following factors:

> (1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy.

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (quotation marks and citation omitted). If "[a]pplication of these principal factors confirms that the Plaintiff is entitled" to the requested subpoena, the motion for early discovery will be granted for good cause. *Malibu Media LLC*, 2016 WL 2894919, at *2 (quotation marks and citation omitted).

Examining the principal factors in detail, the plaintiff must first state a prima facie claim for copyright infringement. *See, e.g., Sony Music Entm't, Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 565 (S.D.N.Y. 2004). Specifically, the plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). *See also Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016) (same).

The owner of a copyright has exclusive rights to reproduce that copyrighted work and to distribute copies to the public by sale, transfer of ownership, rent, lease, or lending. 17 U.S.C. § 106. Moreover, a plaintiff is entitled to seek statutory damages and attorney's fees under the United States Copyright Act if its copyrighted work was registered within three months of the first date of

publication. 17 U.S.C. §§ 411(c)(2), 501.

A plaintiff makes "a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement." *Malibu Media, LLC v. Doe*, No. 14-CV-4808 (JS)(SIL), 2016 WL 4574677, at *6 (E.D.N.Y. Sept. 1, 2016) (quotation marks and citation omitted). *See also Sony Music*, 326 F. Supp. 2d at 565-66 ("[T]he use of P2P [peer-to-peer] systems to download and distribute copyrighted music has been held to constitute copyright infringement." (collecting cases)); *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 375 (E.D.N.Y. 2013) ("Indeed, every court to have addressed this issue has found a sufficiently alleged copyright infringement claim based on BitTorrent technology, even when the defendant was merely identified with an IP address.").

Strike 3 has alleged that it is the owner of the adult films at issue. *See* Doc. 1, ¶31-2; Doc. 1-2. In addition, Strike 3 has made a plausible showing that wrongful "copying" of that work has occurred by alleging that its investigator, IPP International UG ("IPP"), has established a direct TCP/IP connection with the Defendant's IP address, as set forth in Plaintiff' Exhibit A to its Complaint. Doc. 1, ¶24. In particular, Strike 3 has alleged that IPP has established that Defendant's IP address was used to unlawfully download 138 of Plaintiff's copyrighted movies (the "Works") from the BitTorrent file distribution network. *See* Doc. 1-1.[2] Under these circumstances, Plaintiff has

---

[2] In its Complaint [Doc. 1], Strike 3 states:
A full copy of each digital media file was downloaded from the BitTorrent file distribution network, and it was confirmed through independent calculation that the file hash correlating to each file matched the file has downloaded by Defendant. Defendant downloaded, copied, and distributed a complete copy of Plaintiff's Works

4

stated a prima facie case for actionable harm due to copyright infringement.

Second, in order to show "good cause" for early discovery, the plaintiff must narrowly tailor and specify the information sought by the discovery request. The information requested in the subpoena must be limited, seeking "concrete and narrow information: the name and address of the subscriber associated with Doe [Defendant's] IP address . . . . " *John Wiley & Sons, Inc. v. Doe Nos. 1-30,* 284 F.R.D. 185, 190 (S.D.N.Y. 2012). Courts have labeled the subscriber's identity and address as "highly specific," *Malibu Media LLC*, 2016 WL 4574677, at *6, recognizing that "[p]laintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims," *UN4 Prods., Inc. v. Doe-173.68.177.95*, No. 17-CV-3278(PKC)(SMG), 2017 WL 2589328, at *3 (E.D.N.Y. June 14, 2017) (citation and internal quotation marks omitted). *See also Sony Music*, 326 F. Supp. 2d at 566 ("Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process."); *Malibu Media LLC*, 2013 WL 3732839, at *5 n.1 ("Discovery requests must be 'sufficiently specific' to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court.'" (quoting *Sony Music*, 326 F. Supp. 2d at 566)).

In the case at bar, Plaintiff requests leave of court to serve a subpoena to obtain "the true name and address of the Defendant to whom the ISP assigned an IP address as set forth in the Complaint." Doc.7-5, ¶2. Because the requested subpoena is sufficiently specific, the second principal factor weighs in favor of the Court granting Plaintiff's motion for leave to serve the

---

without authorization.
Doc. 1 at ¶¶26-7.

subpoena.

Third, there must be no "alternative means to obtain the subpoenaed information.*" Arista Records*, 604 F.3d at 119 (quoting *Sony Music*, 326 F. Supp. 2d at 564-65). In the case at bar, "the only information Plaintiff has regarding Defendant Doe is his IP address." Doc. 7-1 at 12 (quotation marks and citation omitted). Plaintiff asserts that Defendant's ISP "is the only party with the information necessary to identify Defendant by correlating the IP address with John Doe's identity." Doc. 7-1 at 5. Plaintiff contends that "ISP's records are the only available evidence that allows us to investigate who committed crimes on the Internet. They may be the only way to learn . . . that a certain Internet address was used by a particular human being to engage in or facilitate a criminal offense." *Id.* at 12 (quotation marks and citations omitted). The ISPs who are responsible for assigning IP addresses "know who an address is assigned to and how to get in contact with them." *Id.* (quotation marks and citations omitted). "Otherwise, the owner of an IP address is anonymous." *Strike 3 Holdings, LLC v. Doe*, No. 3:17-CV-1680(CSH), 2017 WL 5001474, at *4 (D. Conn. Nov. 1, 2017). In sum, Plaintiff has established that it lacks alternative means to obtain the subpoenaed information, namely, Defendant's identity and address.

Fourth, the plaintiff must show that the subpoenaed information is necessary to advance the claim at issue. As stated *supra*, Strike 3 cannot learn the subscriber's identity without the subpoenaed information, and consequently cannot serve process on Defendant. *See, e.g., Sony Music*, 326 F. Supp. 2d at 566. *See also Arista Records LLC*, 589 F. Supp. 2d at 153 ("Because learning the true identities of the pseudonymous individuals alleged to have violated Plaintiffs' copyrights is essential to their prosecution of this litigation, Plaintiffs have demonstrated their need for expedited discovery."). As one District Court concluded in this Circuit, "[w]ithout learning the

6

Defendant's identity and address, the Plaintiff will be unable to serve process and pursue its claim." *Malibu Media, LLC v. Doe*, No. 15-CV-3504 (JFB) (SIL), 2016 WL 4444799, at *11 (E.D.N.Y. Aug. 23, 2016) (citation omitted).

Finally, with respect to the fifth prong, the Court weighs the Plaintiff's interest in obtaining the information against that of Defendant's right to privacy. To balance these interests, the Court assesses whether Defendant has an expectation of privacy in his or her IP address while infringing copyrighted material.

"The Supreme Court has long held that a 'person has no legitimate expectation of privacy in information he voluntarily turns over to third parties,' including phone numbers dialed in making a telephone call and captured by a pen register." *United States v. Ulbricht*, 858 F.3d 71, 96 (2d Cir. 2017) (quoting *Smith v. Maryland*, 442 U.S. 735 (1979)). "The recording of IP address information and similar routing data, which reveal the existence of connections between communications devices without disclosing the content of the communications, are precisely analogous to the capture of telephone numbers at issue in *Smith*." *Ulbricht*, 858 F.3d at 97. The Second Circuit then "join[ed] the other circuits . . . [to] hold that collecting IP address information devoid of content is constitutionally indistinguishable from the use of a pen register." *Id.* (quotation marks and citation omitted). Specifically, there is no expectation of privacy in "subscriber information provided to an internet provider," such as an IP address.[3] *Id.* (quotation marks and citation omitted). Such

---

[3] In copyright infringement cases, defendants have argued unsuccessfully that the revelation of their subscriber information, *i.e.*, their IP address, violates their right to privacy under the First Amendment or the Fourth Amendment. For example, they have argued that the First Amendment protects anonymous speech, citing such cases as *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999). *See Sony Music Entm't Inc*, 326 F. Supp. 2d at 562; U.S. Const. amend. I (protecting one's anonymous speech). In other cases, they have asserted that the Fourth Amendment protects their personal information in their IP address from unreasonable seizure. *See Ulbricht*, 858

information has been "voluntarily conveyed to third parties." *Strike 3 Holdings, LLC*, 2017 WL 5001474, at *5 (quotation marks and citation omitted).

In cases where parties have argued that the First Amendment protected their anonymous speech in using their IP addresses, the Second Circuit has held that copyright infringers are not entitled to shield their identities from those who seek to enforce their claims under copyright law. *See, e.g., Arista Records, LLC*, 604 F.3d at 124 (holding defendant's "expectation of privacy for sharing copyrighted [works] through an online file-sharing network [was] simply insufficient to permit him to avoid having to defend against a claim of copyright infringement"). The courts within this Circuit have thus allowed copyright plaintiffs to obtain infringers' IP addresses. For example, in *Sony Music,* the court held that "defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission." 326 F. Supp. 2d at 566. Accordingly, the copyright plaintiffs were "entitled to discovery in light of [the] defendants' minimal expectation of privacy" in transmitting information on the internet in violation of applicable law. *Id. See, e.g., Rotten Records, Inc. v. Doe*, 108 F. Supp. 3d 132, 134 (W.D.N.Y. 2015) ("Plaintiff's interest in learning Defendant's name and address outweighs Defendant's privacy interest." (citing *Arista Records*, 604 F.3d at 124)).

Pursuant to the weight of relevant case authority, the Court finds that the Doe Defendant's

---

F.3d at 96; U.S. Const. amend. IV (protecting "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures"). These privacy arguments have failed. The First Amendment does not protect copyright infringement. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555-56 (1985). "Parties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony Music*, 326 F. Supp. 2d at 563 (citing *In re Capital Cities/ABC, Inc.*, 918 F.2d 140, 143 (11th Cir.1990)). Moreover, the Fourth Amendment does not protect infringers who have voluntarily provided "their IP addresses to Internet service providers for the specific purpose of directing the routing of information." *Ulbricht*, 858 F.3d at 96 (citing *Christie*, 624 F.3d at 574).

First Amendment right to remain anonymous must give way to Plaintiff's right to use the judicial process to pursue its allegedly meritorious copyright infringement claim. Moreover, the Doe Defendant lacks the right under the Fourth Amendment to protect his IP address from revelation, where he has voluntarily shared such information with the ISP, Frontier Communications. Plaintiff will be granted leave to take early discovery to determine the identity of Defendant Doe.

In granting early discovery by subpoena, the Court recognizes that in certain BitTorrent cases involving adult content, other courts have protected the defendants' privacy with an order establishing procedural safeguards. For example, some courts have allowed the defendant to proceed anonymously in the case. *See e.g. Malibu Media*, 2016 WL 4444799, at *2 ("[T]he Court issued a Protective Order governing the manner in which such information would be disclosed."). As set forth *infra*, in ruling on Plaintiff's motion, the Court will establish procedures to protect the Doe Defendant's privacy here; specifically, the Court will provide Defendant with the opportunity to request to litigate the subpoena anonymously and to contest the subpoena prior to the disclosure of Defendants' identity. *See infra,* ¶5. Further, the Court will require Plaintiff to use the identifying information only for the purpose of protecting and enforcing Plaintiff's rights under the copyright, as set forth in its Complaint. *See id.*, ¶7.

### III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the Plaintiff's "Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference" [Doc. 7] and ORDERS, as follows:

1. Under relevant Second Circuit authority, Plaintiff Strike 3 has established that "good cause" exists for the Court to grant Plaintiff leave to serve a third party subpoena on the ISP, Frontier Communications, for the purpose of determining the identity of the alleged infringer, Defendant Doe.

9

*See, e.g., Arista Records, LLC*, 604 F.3d at 119; *Sony Music Entm't*, 326 F. Supp. 2d at 564-65; *Malibu Media, LLC*, 2013 WL 3732839, at *6; *John Wiley & Sons, Inc.*, 284 F.R.D. at 189.

2. Plaintiff may serve the ISP with a Rule 45 subpoena commanding the ISP to provide Plaintiff with the true name and address of the Defendant to whom the ISP assigned the indicated IP address (32.210.53.156), as set forth in the Complaint. *See, e.g.*, Doc. 1, ¶12. Plaintiff shall attach to any such subpoena a copy of this Ruling.

3. Plaintiff may also serve a Rule 45 subpoena in the same manner as described in the preceding paragraph on any service provider who, in response to a subpoena, is identified as a provider of internet services to the Defendant.

4. If the ISP or another service provider (as described in ¶3, *supra*) qualifies as a "cable operator," as defined by 47 U.S.C. § 522(5), it shall comply with 47 U.S.C. § 551(c)(2)(B) by sending a copy of this Ruling to the Defendant.[4] Section 551(c)(2)(B) states in relevant part:

> A cable operator may disclose such [personally identifying] information if the disclosure is . . . made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed.

5. The ISP shall have twenty-one (21) days from the date of service of the Rule 45 subpoena upon it to serve the Defendant Doe with a copy of the subpoena and a copy of this Order. The Defendant shall then have fourteen (14) days to file any motions with this Court to contest the subpoena, as well as to request to litigate the subpoena anonymously. During this fourteen day period, if Defendant contests the subpoena, it shall so notify the ISP, which shall then not turn over

---

[4] 47 U.S.C. § 522(5) defines the term "cable operator" as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system."

any information to the Plaintiff. After resolution of any motion relating to the subpoena, the Court will instruct the ISP when it may, if ever, turn the requested discovery over to the Plaintiff.

6. Alternatively, if the fourteen day period referenced in the preceding paragraph elapses without Defendant contesting the subpoena, the ISP shall have seven (7) days thereafter to produce to Plaintiff the information which is responsive to the subpoena.

7. Plaintiff may only use the information disclosed by an ISP (the true name and address of the Defendant), in response to service of the Rule 45 subpoena, for the purpose of protecting and enforcing Plaintiff's rights under its copyright, as set forth in its Complaint.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
June 7, 2018

 */s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge